# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4008-22
A-4012-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.L. and W.L. SR.,[1]

     Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF W.L. JR.,
minor.

_____

Submitted September 10, 2024 – Decided September 25, 2024

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0002-22.

---

[1] We use initials and fictitious names to protect the confidentiality of the record and the privacy interests. See R. 1:38-3(d)(12).

Jennifer N. Sellitti, Public Defender, attorney for appellant A.L. (Daniel A. DiLella, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant W.L. Sr. (Dianne Glenn, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

A.L. (Anita) and W.L. (Warren) appeal from an August 10, 2023 judgment terminating their parental rights to their son, W.L., Jr. (Wayne). The judgment granted guardianship of Wayne to the Division of Child Protection and Permanency (the Division) with the plan that Wayne will be adopted by his resource parent, B.J. (Bonnie).

In these consolidated appeals, Anita argues the trial court erred in finding that the Division proved by clear and convincing evidence prongs two, three, and four of the four-prong best interests test necessary for termination of her

parental rights. N.J.S.A. 30:4C-15.1(a). Warren argues that the Division failed to establish all four prongs of the best interests test. The Division and the child's law guardian urge us to affirm the judgment and allow the adoption to proceed. Based on our review of the record and the parties' arguments, we affirm the judgment as to Anita. As to Warren, however, we remand for further proceedings for the court to address the second part of prong three regarding the exploration of relatives.

## I.

Anita and Warren have one child together, Wayne, born in May 2020, who is the subject of this appeal. Anita has four other children, none of whom are in her custody. Anita had prior involvement with the Division, and in separate litigation, Anita's parental rights to two of her four children had been terminated, and the children were adopted.

Warren has two adult daughters who do not reside with him and had been in the custody of their mothers. Warren has no prior involvement with the Division.

Both parents have struggled with substance misuse and addiction issues. At the time Anita was due to give birth to Wayne, a hospital social worker contacted the Division because Anita appeared intoxicated and admitted to

having consumed alcohol. Based upon the Division's history with Anita and her unremediated substance misuse issues, the Division had concerns regarding Anita's ability to care safely for the infant. The Division interviewed Warren at the hospital, explaining the reasons for the Division's involvement. Warren advised the worker of his two adult daughters living in the area and "he reported having [seven] sisters."

The Division initially considered implementing a safety protection plan that would permit the child to go home with his parents with Warren supervising Anita's contact. The infant was not released to his parents. A Dodd[2] removal occurred, and the infant was placed with a non-relative resource parent who has cared for him for over four years.

The Division arranged substance abuse evaluations for Anita and Warren and referred them for treatment with the goal of reunifying Wayne with his parents. The substance abuse evaluations recommended intensive outpatient treatment for Anita and made no treatment recommendations for Warren.

Anita attended intensive outpatient substance use treatment at Catholic Charities until she was terminated in October 2020 for noncompliance. In spring

---

[2] A "Dodd" removal refers to the emergency removal of a child from a home without a court order, pursuant to The Dodd Act. N.J.S.A. 9:6-8.21 to -8.82.

A-4008-22

2021, Anita completed detox and began attending an intensive outpatient program. However, soon after completing intake, Anita missed several appointments. On May 18, 2021, she appeared at the program under the influence.

Warren submitted to a second substance abuse evaluation in April 2021. He was diagnosed with moderate alcohol use disorder and referred to outpatient treatment because "there [was] a strong likelihood of continued use" without treatment. Warren had previously been referred to outpatient treatment in January 2021 but did not attend. Warren began an intensive outpatient treatment program in May 2021 but by August 2021, Warren had been discharged due to continued drug use and sporadic attendance.

By 2022, neither Anita nor Warren had fully engaged in treatment, and the Division noted ongoing concerns regarding substance misuse. In March 2022, Anita and Warren were referred for updated substance abuse evaluations, and both tested positive for cocaine. Higher levels of care were recommended for both parents: medically monitored inpatient treatment for Anita and intensive outpatient for Warren. The Division referred Warren to another intensive outpatient program, which he attended briefly and from which he was discharged. Anita did not avail herself of inpatient treatment.

The Division referred Anita and Warren for individual counseling and parenting classes in June 2021 and then again in October 2022. In 2021, efforts to engage Anita and Warren in individual counseling and parenting sessions were not successful. Warren attended only one session in July 2021, and after intake, Anita attended only three sessions. After being referred to the program again in October 2022, Warren attended only one session. By January 2023, a clinician at the program advised Anita that no further sessions would be held until she provided a clean urine screen to the Division caseworker. No further sessions were scheduled.

The Division also arranged weekly parenting time for Anita and Warren with their son; however, their attendance was sporadic. For instance, between February 19 and May 14, 2021, Warren did not show for nine supervised visits, and between November 2022 and February 2023, Warren failed to show for all but one of his visits with his son. Anita periodically called and cancelled visits after the child had already been transported for the visit.

Although the court initially rejected the Division's plan to terminate parental rights followed by adoption giving the parents more time to engage in treatment, this plan was subsequently approved. In August 2021, the Division filed a guardianship complaint.

6

During the four-day guardianship trial in March 2023, the Division introduced numerous documents and presented testimony from three witnesses: a Division adoption worker, a psychological expert, and Wayne's resource parent. The law guardian, who supported the Division's position, did not call any witnesses. Neither Anita nor Warren appeared for trial, nor did they present any witnesses.

The adoption worker, assigned to work with the family in December 2021, testified about the Division's involvement with Anita and her children and the agency's most recent involvement with Anita and Warren and their son, Wayne. He explained how the Division had worked with the parents regarding their substance misuse issues with the initial goal of reunification with Wayne.

The worker described the parents' inconsistent attendance at visits and the periodic drug screens obtained by the Division. The worker explained the Division's efforts to locate family members. He testified that at the time of Wayne's removal, the Division explored Warren's godmother, his two older daughters, and the maternal grandparents. None of these individuals were able to care for Wayne. According to the worker, Anita and Warren advised the Division that even though they had family in the area, "they did not believe that they were in any position to assist in caring for the child." The Division

A-4008-22

conducted a "CLEAR Search"[3] to "identify relatives and family friends associated or linked with the parents." The worker explained that after receiving the results of the search, "we discuss that with the parents, and we'll get their consent as to what would be their preference: what were their wishes."

Dr. Brian Eig, qualified as an expert in the field of psychology, testified on behalf of the Division regarding the psychological and parenting capacity evaluations completed of Anita and Warren in April 2022. Dr. Eig diagnosed Anita with an "alcohol use disorder, stimulant use disorder, cocaine type" and an "unspecified mood disorder." Dr. Eig concluded that Anita's "substance abuse is a formidable obstacle and a significant liability that decreases her parenting capacity."

With respect to Warren, Dr. Eig diagnosed him with alcohol use disorder and stimulant use disorder, cocaine type. Dr. Eig noted a "very positive background" for Warren and considered giving him more time to demonstrate his commitment to sobriety. Dr. Eig ruled out this option "given [the] time that has already passed and [Warren's] inconsistencies" regarding his sobriety and

---

[3] A "CLEAR Search" is a protected online computer search system for collecting information on individuals that has been used to "locate non-custodial parents" for a child. CLEAR child. & fam. servs., Thomson Reuters, https://legal.thomsonreuters.com/en/c/clear/child-family-services (last visited Sept. 18, 2024).

A-4008-22

treatment. Based upon all the information and assessments, Dr. Eig could not recommend either parent independently or as a couple parent Wayne. In determining "whether [they] cured and overcame the initial harm that endangered the health, safety or welfare of the child, and [would be] able to continue a parental relationship without recurrent harm to the child," Dr. Eig did not see either parent's capacity improving "appreciably in the foreseeable future."

Wayne's resource parent, Bonnie, testified regarding her commitment to adoption and her understanding of KLG. Bonnie stated unambiguously she does not wish to enter a KLG arrangement based upon that understanding and belief that adoption offers the most permanent resolution for Wayne.

After trial, the court issued a lengthy written opinion finding that the Division had established all four prongs of N.J.S.A. 30:4C-15.1 by clear and convincing evidence and that Wayne's best interests would be served by terminating Anita and Warren's parental rights, thereby freeing Wayne to be adopted by his resource parent.

Addressing the first prong of the best interest test, the judge found Anita and Warren's behavior that endangered Wayne was "multifactorial." The judge detailed Anita's "long and persistent history of substance abuse, noncompliance

A-4008-22

with services . . . and employment instability." Anita's failure to appear for trial "mirror[ed] her lack of attendance at visitation with her son." With respect to Warren, the judge explained his "continued drug abuse, refusal to engage in drug treatment, and the paucity of his visitation" demonstrated either his unwillingness or inability to provide the "day-to-day nurturing" Wayne required.

The court found the Division had established that neither parent had cured the harm facing Wayne or was able to provide a safe and stable home for their son, thus satisfying prong two. The court further concluded that giving either parent additional time would serve only to delay permanency for Wayne and "would result in more harm to him." Warren, as the court found, "through his acts and omissions, [had] not shown any desire to parent his son." Anita's continued substance abuse and failure to engage in treatment clearly convinced the court that additional time is unlikely to "result in the harm being remediated."

With respect to the reasonable efforts' requirement under prong three, the court concluded the Division satisfied their obligation to provide Anita and Warren with services aimed at supporting their recovery efforts, such as referrals to various substance abuse treatment programs and individual counseling. Additionally, the adoption worker testified regarding the Division's efforts to

10

provide transportation assistance, urine screens, and parenting time for Anita and Warren with Wayne. Accordingly, the court found that the Division's efforts were "aimed at improving [Anita's] parenting skills, mental health and substance abuse issues" and helping Warren "correct the circumstances that led to Wayne's removal" satisfying the first part of prong three.

The court was also satisfied that alternatives to termination, such as KLG with the current resource parent, were adequately explored. The court concluded that KLG had been sufficiently presented to and considered by the resource parent who expressed her commitment to adopting Wayne. The court further found that relatives were adequately explored and noted the adoption worker "conducted 'clear searches' for both parents to find replacement relatives, but none of the identified relatives were able or willing to care for [Wayne]."

The court found ample evidence to conclude that termination of Anita and Warren's parental rights would not do more harm than good. Neither parent's relationship with Wayne was sufficient to "guide him through childhood and adolescence," and thus, "[i]t is in [Wayne's] best interest to achieve permanency through termination of parental rights so that he may be free to be adopted by the resource parent and have stability." This appeal followed.

## II.

Our scope of review on appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). We will uphold a trial judge's factfindings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth and Fam. Servs. v. E.P., 196 N.J. 88, 104 (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)).

To terminate parental rights, the State must demonstrate by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to

provide a safe and stable home for the child and the delay of permanent placement will add to the harm;[4]

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30: 4C-15.1(a)(1) to (4).]

The "prongs are not discreet and separate," but overlap with each other. N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 167 (2010) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 606-607 (2007)). The goal of this comprehensive statute is to effectuate the best interests of a child.

Anita presents three issues on appeal arguing: (1) the lack of a comparative bonding evaluation is fatal to establishing prong two of N.J.S.A. 30:4C-15.1; (2) the court failed to consider alternatives to termination of parental rights and failed to consider the child's rights to sibling contact; and (3) the court erred in concluding that termination will not do more harm than good.

---

[4] On July 2, 2021, the Legislature enacted L. 2021, c. 154, deleting the last sentence of N.J.S.A. 30:4C-15.1(a)(2), which read, "[s]uch harm may include evidence that separating the child from [the child's] resource family parents would cause serious and enduring emotional or psychological harm to the child."

Warren raises these issues on appeal, contending: (1) there was insufficient evidence to demonstrate he had harmed the child or that his conduct threatened the child's health, safety, or development; (2) the Division's efforts to provide services to him were not reasonably tailored to address his substance abuse issues; (3) the Division failed in its obligation under N.J.S.A. 30:4C-12.1 to notify and explore kin; and (4) the failure to consider alternatives to termination render the record insufficient to establish that termination will not do more harm than good.

After carefully reviewing the record and applicable legal standards and considering the arguments of the parties, we are convinced that there is no basis for us to disturb the trial court's decision as to Anita. However, we are constrained to remand the matter to the trial court for further consideration of paternal relatives as required by the second part of prong three.

A. Anita

Notably, Anita does not challenge prong one of the statute, nor does she challenge the reasonable efforts requirement under prong three. As to the remaining prongs, the trial court's factual findings are fully supported by the record, and the legal conclusions based on those findings are unassailable. As to the argument regarding a lack of a comparative bonding evaluation and its

impact on prong two, we note the following.

When amending Title 30, the Legislature amended only prong two of the best interest standard under N.J.S.A. 30:4C-15.1(a) by deleting the sentence "[s]uch harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child." Compare L. 2021, c. 154, § 9 (current N.J.S.A. 30:4C-15.1 (a)(2)), with L. 2015, c. 82, § 3 (prior version). Our Supreme Court has recognized "[t]he Legislature acted to preclude trial courts from considering harm resulting from the termination of a child's relationship with resource parents when they assess parental fitness under the second prong, but not to generally bar such evidence from any aspect of the trial court's inquiry." New Jersey Div. of Child. Prot. & Permanency v. D.C.A., 256 N.J. 4, 26 (2023). Any information, factual or expert opinion, regarding the child's bond to a resource parent is more appropriately considered under prong four. However, where the termination, as in this case, is "not predicated upon bonding, but rather reflect[s] [the child's] need for permanency and [the biological parent's] inability to care for [the child] in the foreseeable future[,]" a lack of bonding evaluation is not fatal to the Division's case. See N.J. Div. of Youth & Fam. Servs. v. B.G.S., 291 N.J. Super. 582, 593-94 (App. Div. 1996).

A-4008-22

B. <u>Warren</u>

Turning now to Warren's challenges to the trial court's findings on all four prongs, those findings as to prongs one and two are amply supported by the credible evidence presented at trial. For the reasons detailed by the trial court, we affirm those findings. There were, however, insufficient findings as to the second part of prong three, "that alternatives to termination of parental rights were considered" as to Warren.

Prong three consists of two requirements: first, the Division must make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," and second, the court is required to "consider alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). Alternatives include placement with caregivers under Kinship Legal Guardianship (KLG). <u>N.J. Div. of Youth and Fam. Servs. v. R.G.</u>, 217 N.J. 527, 558 (2014). Our focus is on the second requirement of prong three.

It has long been the public policy in New Jersey that the Division must perform a reasonable investigation to identify family as potential caregivers for children who are removed from their parents or guardians. Upon removal from

their home, children's best interests are generally served when they can be placed with family members as opposed to non-relative resource caregivers. Moreover, "[t]he Division has a statutory obligation to contact relatives of a child in its custody." N.J. Div. of Youth and Fam. Servs. v. K.L.W., 419 N.J. Super. 568, 576 (App. Div. 2011). N.J.S.A. 30:4C-12.1 mandates:

> **a.** In any case in which the Department of Children and Families accepts a child in its care or custody, including placement, the department shall consider placement of the child with a suitable relative or person who has a kinship relationship as defined in section 2 of P.L.2001, c.250 (C.3B:12A-2). The department shall initiate a search for relatives or persons with a kinship relationship with the child who may be willing and able to provide the care and support required by the child. The search shall be initiated within 30 days of the department's acceptance of the child in its care or custody. The search will be completed when all sources contacted have either responded to the inquiry or failed to respond within 45 days. The department shall complete an assessment of each interested relative's or person's ability to provide the care and support, including placement, required by the child.
>
> **b.** If the department determines that the relative or person who has a kinship relationship with the child is unwilling or unable to assume the care of the child, the department shall not be required to re-evaluate the relative. The department shall inform the relative or person in writing of:
> **(1)** the reasons for the department's determination;
> **(2)** the responsibility of the relative or person to inform the department if there is a change in the circumstances upon which the determination was made;

17

**(3)** the possibility that termination of parental rights may occur if the child remains in resource family care for more than six months; and
**(4)** the right to seek review by the department of such determination.

**c.** The department may decide to pursue the termination of parental rights if the department determines that termination of parental rights is in the child's best interests.

[N.J. S. A. 30:4C-12.1.]

In 2021, the Legislature strengthened this policy by enacting amendments to various statutes concerning children, including N.J.S.A. 30:4C-12.1, requiring the search for relatives, and N.J.S.A. 30:4C-15.1, governing termination of parental rights proceedings, and the Kinship Legal Guardianship Act, N.J.S.A. 3B:12A-1 to -7, governing KLG proceedings. L. 2021, c. 154. Under these amendments, KLG is now considered equal to adoption in terms of providing permanency to children. L. 2021, c. 154 § 4; see also N.J. Div. of Child Prot. & Permanency v. D.C.A., 474 N.J. Super. 11, 26-28 (App. Div. 2022), aff'd, 256 N.J. 4 (2023). Recognizing the importance of family placements, the Legislature declared, in part:

> Kinship care is the preferred resource for children who must be removed from their birth parents because use of kinship care maintains children's connections with their families. There are many benefits to placing children with relatives or other kinship caregivers, such

18

as increased stability and safety as well as the ability to maintain family connections and cultural traditions.

[L. 2021, c. 154 § 1(6).]

The record reveals that Warren advised the Division caseworker during the initial investigation at the time of Wayne's birth that he had seven sisters: one older and six younger sisters who lived in Tennessee. Warren explained that while his family was "not local for something to happen immediately," his family had been supportive in his life. Moreover, during his evaluation with Dr. Eig in April 2022, as reflected in Dr. Eig's report, Warren "reported having one older sister and six younger sisters with whom he denied any history of relationship problems." Warren added that his sisters were very protective over him.

The Division's record does not reflect that Warren provided contact information regarding his siblings or requested they be investigated as potential placement for Wayne. Nor is there evidence that any of Warren's siblings contacted the Division. The record is also void of any effort by the Division to obtain contact information or reach out to Warren's siblings.

On at least one occasion, March 16, 2022, Anita and Warren advised the Division that there were no available family members willing or able to care for the child. At a court hearing on April 1, 2022, the Division's court report stated

that "the Division is to explore kinship care or placement, but neither parent has named or identified a family member or friend who they believe is willing and able to care for the child." The court inquired of defense counsel whether there had been any change on this topic, and counsel on behalf of the defendants advised the court that at the present time there were no relative resources.

During trial, the adoption worker explained that a "CLEAR search" to identify relatives had been done. While the worker mistakenly believed that parents must consent to the Division's inquiry into any identified relatives, the record is unclear as to whether the search identified any of Warren's seven sisters. On cross examination, the adoption worker acknowledged he was unaware of Warren's siblings. In its decision, the trial court noted that the adoption worker "testified that no efforts were made to contact siblings of [Warren] after the initial contact." However, the worker clearly had no contact at all with any of Warren's sisters. Contrary to this testimony, the court concluded the Division had considered alternatives to termination despite the lack of contact with these seven paternal relatives.

The requirement to search for relatives is mandated by statute to further the best interests of children who are not able to remain in the custody of their parents. As a result, the Division's obligation to search for relatives is not

constrained by the parents' consent or their willingness to provide contact information. Importantly, children placed outside of their homes have rights independent of the rights of their parents, including the right to maintain family connections.  See N.J.S.A 9:6B-4.

We recognize that Warren may have provided conflicting information at times to the Division.  Nonetheless, the responsibility to initiate a search rests with the agency and is not dependent upon the information provided by the parents.  See N.J.S.A. 30:4C-12.1(a).   As we stated in K.L.W.,

> We do not suggest that the Division has an obligation to search the fifty states or even the twenty-one counties to identify a parent's siblings, cousins, uncles and aunts.  Nor do we suggest that a parent can expect the Division to locate a relative with no information or . . . wait until the eve of the guardianship trial to identify a relative who is willing to adopt.  We simply hold that the Division's statutory obligation does not permit willful blindness and inexplicable delay in assessing and approving or disapproving a relative known to the Division . . .
>
> [K.L.W., 419 N.J. Super. at 582.]

Where the Division fails to satisfy its statutory obligation to assess relatives, "the judicial determinations that follow are made without information relevant to the best interests of the child." Id. at 581.  Given the omission in this case, the Division fell short of its statutory obligation to explore Warren's relatives

21

thus necessitating a remand.

Finally, to the extent we have not otherwise addressed any of the appellants' remaining arguments, we determine they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In summary, we affirm the judgment terminating Antia's parental rights to Wayne. Concerning the judgment's termination of Warren's parental rights, we remand the matter to the trial court for the limited purpose of holding a hearing and providing a supplemental statement of reasons addressing whether any of Warren's sisters are available or appropriate for KLG of Wayne. The hearing is to be held and the supplemental statement is to be issued within ninety days. Thereafter, Warren is to immediately file and serve a letter stating whether he wants to continue this appeal. If Warren continues the appeal, he shall also file and serve an appendix and brief, not to exceed ten pages, addressing part two of prong three. The Division and Law Guardian will then have ten days to file and serve appendices and responding briefs, not to exceed ten pages.

Affirmed in part and remanded in part. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-4008-22